GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION
JASON WALLACH (State Bar No. 75535)
*JWallach@ghplaw.com*
1901 Avenue of the Stars, Suite 1100
Los Angeles, California 90067
Telephone: (310) 556-4660
Facsimile: (310) 556-8945

*Attorneys for Plaintiffs*
*Mountain Smoke Shop, Inc., a California corporation d/b/a*
*Mountain Smoke Shop, Akram Hanna and Rami Georges*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOUNTAIN SMOKE SHOP, INC., A CALIFORNIA CORPORATION D/B/A MOUNTAIN SMOKE SHOP, AKRAM HANNA AND RAMI GEORGES,<br><br>Plaintiffs,<br><br>v.<br><br>GS HOLISTIC, LLC,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT FOR RELIEF FROM JUDGMENT OBTAINED BY FRAUD UPON THE COURT— FEDERAL RULES OF CIVIL PROCEDURE 60(d)(3)** |

The Plaintiffs, MOUNTAIN SMOKE SHOP, INC. d/b/a MOUNTAIN SMOKE SHOP, AKRAM HANNA AND RAMI GEORGES, by and through their undersigned counsel, hereby file this Complaint against the Defendant GS HOLISTIC, LLC (hereinafter referred to as "GS" or "Defendant"), and allege, as follows:

## JURISDICTIONAL ALLEGATIONS

1. This is a civil action against the Defendant for relief from a default judgment against Plaintiffs by Defendant, in United States District Court for the Central District of California, in Case No. 2:22-cv-07411-RGK-RAO (the "underlying case") entered on March 14, 2023 (the "Judgment").

1

2.    The basis of the action is that Defendant perpetrated a fraud upon the Court in prosecuting that action and obtaining the Judgment therein by default, upon claims for trademark infringement, counterfeiting, and false designation of origin and unfair competition, under the Lanham Act (15 U.S.C. § 1051 *et. seq.*).

3.    This Court has subject matter jurisdiction over the claims herein in that the Judgment was entered in this District and does not need an independent basis for jurisdiction of this separate action seeking relief from the Judgment[1].

4.    This Court has personal jurisdiction over the Defendant because GS is a Delaware limited liability company, registered to do business in and having its principal place of business in Los Angeles, California, and conducted the business of commencing litigation in at least 224 virtually identical cases in the Central District of California.

**VENUE**

5.    Venue is proper in this district because the Judgment was entered in this District.

**PARTIES**

6.    Plaintiffs are informed and believe, and thereon allege that

a.    Defendant GS is a Delaware Limited Liability Corporation that had, at all times relevant herein, its principal place of business at 7162 Beverly Boulevard, #207, Los Angeles, California 90036.

b.    Its California office is currently listed at 2942 Columbia Street, Torrance, California 90503.

7.    Plaintiff MOUNTAIN SMOKE SHOP, INC. d/b/a MOUNTAIN SMOKE SHOP ("Mountain") is a California/corporation with its principal place of business within the Central District of California.

---

[1] See U.S. v. Beggerly, 524 US 38, 46 (1998).

8. AKRAM HANNA ("Akram") and RAMI GEORGES ("Rami") are individuals, residing within the Central District of California. Mountain, Akram and Rami are collectively referred to herein as "Plaintiffs".

**FIRST CLAIM FOR RELIEF**

9. Defendant commenced the underlying action on October 11, 2022, and served the Complaint therein upon Plaintiffs.

10. Plaintiffs promptly engaged and retained Edward Patrick Morris, a duly licensed member of the California State Bar and Plaintiffs are informed and believe, a member of the bar of this Court, to represent them in the underlying action for settlement or if necessary, in litigation. Mr. Morris assured Plaintiffs that he would do so. Mr. Morris was at that time, representing other defendants in other virtually identical trademark infringement actions brought by GS.

11. Mr. Morris then reported that he had contacted GS' legal counsel, Mr. Leon and was informed that he could settle the underlying action for $12,500 upon prompt payment or $15,000 or $18,000 upon payment terms.

12. Plaintiffs authorized and instructed Mr. Morris to settle the case for a prompt payment of $12,500. Mr. Morris confirmed that he would do so. Mr. Morris apparently failed and neglected to do so.

13. Mr. Morris failed and neglected to file any appearance or responsive pleading in the underlying action resulting in entry of default and ultimately entry of default judgment against Plaintiffs, entered March 14, 2023.

14. Plaintiffs are informed and believe and thereon allege that:

    a. Defendant and its counsel failed to give notice of the damages sought in the proposed Default Judgment, notwithstanding the requirements of Local Rule 55-2, and failed to give Plaintiffs notice of the opportunity to contest such damages.

    b. Instead, Defendant and its counsel represented to and misled the

Court by attaching a "Certificate of Service" stating that counsel of record had been served via CM/ECF. At that time, there were no counsel of record for Mountain, Akram or Rami, and no service or notice was given at all.

15. When Plaintiffs became aware of the Judgment, they immediately contacted Mr. Morris, informed him of the Judgment and requested and instructed him to take care of it, by settlement or litigation if necessary. Mr. Morris assured Plaintiffs that he would do so by getting the Judgment vacated, stating that GS had not given him the required notice that it was seeking a default judgment.

16. Plaintiffs subsequently became aware that Mr. Morris had done nothing to vacate the Judgment or to settle the claim.

17. Plaintiffs are informed and believe, and thereon allege that Mr. Morris has suffered and now admits a cognitive decline in and after 2022, possibly from "Long-Covid" which may explain his admitted abandonment of Plaintiffs, despite having been engaged and retained to represent Plaintiffs, and having repeatedly assured them that he would do so.

18. GS perpetrated a fraud upon the Court, in seeking and obtaining the Judgment, by submitting intentionally false testimony in affidavit form, on the material and critical issues of Mountain's conduct, and falsely representing activities and knowledge of Akram and Rami , a lack of excusable neglect, and of the damages suffered, in order to persuade and invoke the discretionary award of damages in an amount that is entirely unwarranted against Akram and Rami, and grossly overstated against Mountain.

19. As a result, Plaintiffs have suffered a grave injustice, while GS harmed the integrity of the judicial process, resulting in a miscarriage of justice in the underlying action and in multiple other virtually identical actions in this District, that resulted in default judgments.

20. Plaintiffs are informed and believe and thereon allege that GS' fraud

upon the Court in the underlying case, was part of a nationwide plan and scheme to improperly influence the Courts to award damages at all, or in an amount high in the range of statutory damages between $1,000 and $200,000 per violation, and seeking an award of damages of $150,000 against Plaintiffs (and a virtually identical scheme against over 900 other defendants in Districts across the United States).

21. Plaintiffs are informed and believe that

    a. GS' fraud upon the Court in the underlying case, was small part of the unconscionable scheme in which GS acted as a litigation mill, suing small businesses like Mountain and their alleged controllers, with virtually identical boilerplate complaints and affidavits, and demanding settlements that these small businesses might chose to pay, instead of incurring the risk of substantial attorney fees and potentially huge alleged liabilities, or defaulting.

    b. All of such defaults resulted in GS's submission of false testimony by affidavits entitled "Affidavit as to Damages" and "Affidavit as to Value of Damages", as GS did in the underlying case.

22. Plaintiffs are informed and believe that:

    a. GS filed not less than 224 such virtually identical cases in the Central District of California without identifying any of them as "related."

    b. Of the 224 such cases filed in this District, all but 18 of them have been disposed of by settlement or default judgment; none have been determined on their merits.

    c. GS filed not less than 920 such virtually identical cases in the District Courts of the United States.

23. The intentionally false statements made by GS in seeking the award of damages in the underlying action, were made in GS' Motion for Default Judgment, including the proof of damages required by Local Rule 55-2, which are not presumptively admitted as true by the default.

24.  These materially false statements in the Affidavit as to Damages submitted by GS in the underlying case include:

    a.  In paragraph 6, page 2 lines 6-7 that

"On August 5, 2022, counterfeit products…were sold by the Defendant store, facilitated by the Defendant store owner."

In fact, the only such product sold by Mountain on August 5, 2022 or at any other time, was sold to GS' investigator; and Akram and Rami had no such "facilitation" of any sale of such products.  GS had no basis for making this statement under oath, never having had any contact with Akram or Rami

    b.  In paragraph 7, page 2 lines 8-10, that

"The store sold the fake product…for $433.39 when the actual sales price of the real product at retail is $599.95, which is deceptive and confusing to the buyer as the price point is almost identical."

It is so illogical as to be false, to say that $433.39 and $599.95 are almost identical or confusing. In any event, the sale alleged was to GS' investigator, who could not have been confused by the price.  There were no other sales.

    c.  In paragraph 8, page 2 lines 12-14 that

"The Defendant store owner, which is in the business of selling vaporizers and accessories knew the price Stundenglass products…".

This is false, the owners, Akram and Rami, did not know the price of Stundenglass products.  Akram had no knowledge or participation in selecting or ordering the merchandise, genuine or fake.  Rami, as Mountain's store manager purchased the product, through a reputable wholesaler of long standing, which identified the items purchased by Mountain, on the invoice, as "Gravity Hookah Stundenglass".  Finally, GS had no way to know what Akram or Rami knew or did not know, since it never was in contact with them, directly or indirectly.

    d.  Paragraph 16, page 3 lines 17-19, that

> "The actions were done willfully, as the Defendants were well aware that the same product, that the Defendants sold, was of far superior quality yet sold for almost the exact retail price of an authentic Stundenglass."

If this mangled and unintelligible statement under oath is interpreted to mean that Mountain, Akram or Rami were well aware of the quality of either the genuine or fake merchandise, it is false. Neither Akram nor Rami were aware of the quality (superior?) of the hookah sold to GS' investigator, compared to genuine Stundenglass. Rami, as Mountain's store manager, believed they had bought and paid for Stundenglass product from a reputable wholesaler of long standing, and Akram had no knowledge whatsoever. And of course, $433.39 is not "almost the exact retail price of an authentic Stundenglass" as stated under oath: it is less than $3/4^{th}$ of the price.

   e. Paragraph 17, page 3 lines 20-21,

> "The Defendant store … knows the actual value of an authentic Stundenglass product."

This is false, since Mountain and Rami had no reason to know the "actual value" other than the price from the wholesaler or the price at which Mountain was willing to sell what had been represented as "Gravity Hookah Stundenglass." And Akram had no knowledge whatsoever.

   f. Paragraph 17, page 3 line 22,

> "Defendants willfully sold the fake product,"

This is false since Mountain and Rami believed at all times that Mountain was selling Stundenglass; and Akram had no knowledge whatsoever of the purchase or sale of this item.

  25. These inflammatory and false statements under oath, made without any basis in fact, were presented to the Court in an Affidavit of Christopher Folkerts for the stated purpose of persuading the Court to exercise his discretion and to grant

$150,000 in statutory damages, within the statutory range of "not more than $1,000 or more than $200,000 per counterfeit mark" (Paragraph 14, lines 10-11). Plaintiffs believe that the Court was persuaded by these statements under oath and granted the $150,000 as requested by GS.

26. Absent Mr. Folkerts' false and inflammatory statements under oath of willfulness, of knowledge of the Stundenglass quality and pricing, and of knowledge that counterfeit merchandise was being sold, the Court would have been presented with an unintentional, and unknowing sale of one counterfeit item to GS' investigator, which Mountain had purchased from a reputable wholesaler as a "Gravity Hookah Stundenglass". Plaintiffs believe the Court would have been likely to grant statutory damages at the very low end of the statutory discretionary range, of say, $2,000 per mark, rather than $50,000 per mark.

27. Absent Mr. Folkerts' false, baseless and inflammatory statements under oath about Akram and Rami, the Court might have properly declined any award of damages against Akram and Rami.

28. Since it is undisputable that the false and inflammatory statements were made to improperly influence the Court to make a judgment radically different from that justified by the truth, this is a fraud on the Court, and that the false and inflammatory statements made under oath, harmed the integrity of the judicial process.

29. Plaintiffs herein, Mountain, Akram and Rami, had no notice or knowledge of these false and fraudulent statements, until after the entry of judgment, since GS and its counsel did not give any notice, much less make service upon Mr. Morris, Mountain, Akram or Rami, that it was seeking a default judgment including assessment of $150,000 damages.

30. Plaintiffs are informed and believe, and thereon allege that

    a. GS' counsel knew that Mr. Morris, representing Mountain, Akram

and Rami, had contacted GS counsel but had not responded to the Complaint on their behalf.

      b.    GS intentionally took advantage of the inability of Plaintiffs herein to oppose entry of default judgment, or to rebut the false and inflammatory statements about damages, by making the false statements enumerated above, and by failure to give notice of the affidavits in support of the default judgment that GS sought,.

      c.    GS had the intention and will to persuade the Court of "facts" that were not true, and which GS knew were baseless and not true because they had not made any investigation into the knowledge, participation or intent of Mountain, Akram or Rami.

31.    GS' intentional fraud on the Court warrants that Plaintiffs herein be granted relief from the default and default judgment, be given the opportunity to have this case decided on its merits, and to expose the truth, rather than GS' lies, under oath.

WHEREFORE, Plaintiffs herein pray that they be relieved from the Default Judgment in Case No. 2:22-cv-7411-RGK entered on March 14, 2023; that such Judgment be vacated; and that Plaintiffs herein be granted twenty-one (21) days to respond to the Complaint herein, and such other and further relief as may be just and proper.

DATED: April 10, 2025

GIPSON HOFFMAN & PANCIONE
A Professional Corporation

By: *Jason Wallach*
JASON WALLACH
Attorneys for Plaintiffs
MOUNTAIN SMOKE SHOP, INC., A California Corporation d/b/a MOUNTAIN SMOKE SHOP, AKRAM HANNA AND RAMI GEORGES